STATE OF NORTH CAROLINA v. MICHAEL J. FLAHERTY

No. 8126SC464

(Filed 1 December 1981)

**Automobiles §§ 38, 114— intersection accident—police vehicle—instructions on involuntary manslaughter improper**

In a prosecution for involuntary manslaughter, wherein defendant police officer collided with a car at an intersection while on duty, the trial judge erred in his instructions to the jury. Where defendant's evidence was sufficient to bring him within the exemption for emergency vehicles under G.S. 20-145, the trial court properly instructed that the jury was to consider whether defendant had proven to the satisfaction of the jury that he was acting within the exceptions of the statute. It erred in further instructing, however, that if this was found, the jury should consider "whether or not the conduct of the defendant, Michael Flaherty, was that which a reasonable and prudent person would exercise in the discharge of official duties of a like nature under like circumstances," as a reasonable interpretation of the quoted instruction allowed the jury to convict the defendant of involuntary manslaughter on the basis of simple negligence, and a criminal prosecution for involuntary manslaughter requires proof beyond negligence.

ON a writ of certiorari to review judgment of *Cornelius, Judge.* Judgment entered 28 March 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 20 October 1981.

The defendant was convicted as charged of three counts of involuntary manslaughter. He appeals from the consolidated judgment imposing a jail term of one year minimum, three years maximum.

State's evidence tended to show that the defendant, a patrolman for the Charlotte Police Department, was driving his patrol car along Central Avenue in Charlotte on the night of 16 November 1979 and that he entered the intersection of Central Avenue and Morningside Drive and collided with a BMW automobile that entered the intersection on Morningside. Three passengers in the BMW automobile were killed. There was a traffic light at the intersection, and the posted speed limit along Central Avenue was 35 miles per hour. Witnesses testified that the traffic light was giving a red signal for traffic on Central, and they estimated the defendant's speed at 60 to 75 miles per hour. Witnesses also testified that defendant had his car's flashing

yellow lights and blue lights on and that defendant "hit the siren one time" for a couple of seconds. State presented in evidence General Order 45 issued by the Charlotte Police Department which provides that officers responding to an emergency situation should exceed the posted speed limit by no more than 10 miles per hour.

Defendant testified that he was on Central Avenue when he heard another police officer radio that he was in pursuit of a vehicle and needed help and that he responded to this call. He stated that he turned his siren on but then turned it off so that he could hear the radio transmissions. As he approached the intersection with Morningside Drive, he had his blue lights and four-way flashers on and he had his siren "in the yelp position." Defendant stated that he was traveling 45 to 50 miles per hour and that the traffic light was green for traffic on Central. He stated that he swerved to avoid the automobile on Morningside but that the cars collided. Defendant also presented evidence to the effect that police officers routinely violated General Order 45, especially when life was threatened or when another police officer called for assistance.

*Attorney General Edmisten by Special Deputy Attorney General Isaac T. Avery, III, and Assistant Attorney General Joan H. Byers, for the State.*

*James H. Carson, Jr., for defendant appellant.*

CLARK, Judge.

Defendant's assignments of error relate to the jury instructions. The trial judge submitted involuntary manslaughter and death by motor vehicle as possible guilty verdicts. With respect to involuntary manslaughter, he instructed that the State had to prove beyond a reasonable doubt (1) that the defendant violated the law with respect to the operation of motor vehicles; (2) that the violation constituted culpable negligence, *i.e.*, that it was willful, wanton or intentional; and (3) that the violation proximately caused death. In the course of explaining the first two elements, the judge instructed on the applicable provisions of G.S. § 20-141, the statute which defines speed restrictions, and on § 20-34 of the Charlotte Code, the ordinance which provides for traffic control by means of traffic lights. The judge then in-

structed that under certain circumstances police officers may be exempt from these laws, and in this regard he instructed on the provisions of G.S. § 20-145 and § 20-3 of the Charlotte Code. These laws, in pertinent part, provide as follows:

G.S. § 20-145. *When speed limit not applicable.* — The speed limitations set forth in this Article shall not apply to vehicles when operated with due regard for safety under the direction of the police in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation . . . . This exemption shall not, however, protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others.

Sec. 20-2. *Emergency vehicles; exemptions.*

(a) The provisions of this chapter regulating the operation, parking, and standing of vehicles shall not apply to vehicles of the police department nor to fire department or fire patrol vehicles when an exemption from said provisions is reasonably necessary in the actual discharge of official duties . . . .

. . .

(d) The provisions of this section shall not operate to relieve the driver of any such vehicle from the duty to drive with due regard for the safety of all persons and property using the streets, nor shall such provisions protect the driver of any such vehicle from the consequences of his reckless disregard of the safety of others.

Applying G.S. § 20-145, the trial judge instructed as follows:

Should the defendant, Michael J. Flaherty, satisfy you that he was a police officer who operated his vehicle with due regard for the safety of others while he was engaged in a chase or apprehension of violators of the law or persons suspected of such violations, and did not recklessly disregard the safety of others, he would then be exempt from the normal requirements of the speed laws. Should he fail to so satisfy you, however, he would not be exempt from the normal requirements of the speed laws, and you would not consider his operation of the vehicle under the standard

applicable to exempt police officers. If you should find to your satisfaction that Officer Flaherty has proved that he is exempt from the normal requirements of the speed laws, you will then consider whether or not the conduct of Officer Flaherty was that which a reasonable and prudent person would exercise in the discharge of official duties of a like nature under like circumstances.

Thus, as to the second element, culpable negligence, on the question of the speed laws, you must first decide whether or not there is a wilful, wanton, or intentional violation of the safety statute, the burden of proof on that question being upon the State to prove it to you beyond a reasonable doubt. You will then decide whether or not the defendant, Michael Flaherty, has satisfied you that he was operating a police vehicle with due regard for the safety of others while engaging in a chase or apprehension of a violator of the law, or a person charged with or suspected of a violation, and that he did not recklessly disregard the safety of others. Should the defendant Flaherty so satisfy you, he would then be exempt from the normal requirements of the speed laws, and you would then consider whether or not the conduct of the defendant, Michael Flaherty, was that which a reasonable and prudent person would exercise in the discharge of official duties of a like nature under like circumstances.

Applying § 20-3 of the Charlotte Code, the trial judge instructed:

Thus, should the defendant, Michael Flaherty, satisfy you that the manner in which he operated his vehicle was reasonably necessary and in the actual discharge of his official duties; and that the manner in which he operated his vehicle was with due regard for the safety of all persons and properties using the streets, and that he did not recklessly disregard the safety of others, you would then find he was exempt from the provisions of Section 20-34 of the City Code requiring that he stop at a red light. Should the defendant fail to satisfy you that he is exempted from the provisions of this ordinance, you would not consider the question of the reasonableness of the defendant's conduct. Should, however, you be satisfied by the defendant, Michael Flaherty, that he was exempted from the provisions of the Ordinance, Section

20-34, you would then consider whether or not his conduct was that which a reasonable and prudent person would exercise in the discharge of official duties of a like nature under like circumstances.

Thus, on the question of the stop signal, you will first decide whether or not there was a wilful, wanton, or intentional violation of the safety statute, that being the City Code ordinance relating to stopping at traffic signals. You will then decide whether or not Officer Flaherty has satisfied you that he is exempted from the operation of that safety statute. Should Officer Flaherty fail to satisfy you of his exemption, you will go no further on the question of his reasonableness. Should he satisfy you that he is exempted from the operation of the traffic signal ordinance, you will then consider whether or not his conduct was that of a reasonable and prudent person in the discharge of official duties of a like nature under like circumstances.

Defendant challenges the manner in which the trial judge allocated the burden of proof and the manner in which he related the various motor vehicle statutes and ordinances to the present facts.

Initially, we must consider the nature of the exemptions provided by G.S. § 20-145 and § 20-3 of the Charlotte Code. We begin with the following discussion in *State v. Connor*, 142 N.C. 700, 701-02, 55 S.E. 787, 787 (1906):

It is well established that when a statute creates a substantive criminal offense, the description of the same being complete and definite, and by subsequent clause, either in the same or some other section, or by another statute, a certain case or class of cases is withdrawn or excepted from its provisions, these excepted cases need not be negative in the indictment, nor is proof required to be made in the first instance on the part of the prosecution.

In such circumstance, a defendant charged with the crime who seeks protection by reason of the exception, has the burden of proving that he comes within the same. (Citations omitted.)

.  .  .

> . . . [T]he rule and its application depends not so much on the placing of the qualifying words, or whether they are preceded by the terms, "provided" or "except;" but rather on the nature, meaning and purpose of the words themselves.

Stated otherwise, "when defendant relies upon some independent, distinct, substantive matter of exemption, immunity or defense, beyond the essentials of the legal definition of the offense itself, the *onus* of proof as to such matter is upon the defendant. (Citations omitted.)" *State v. Davis*, 214 N.C. 787, 793, 1 S.E. 2d 104, 108 (1939). In fact, the distinction between an element of crime and a matter of defense is not as clear-cut as these cases might suggest. As this Court noted in *State v. Trimble*, 44 N.C. App. 659, 262 S.E. 2d 299 (1980):

> Upon close analysis, however, the distinction between the element and the defense blurs, for it is together that the elements and defenses define the substantive parameters of criminal liability. When one thinks in terms of circumscribing the parameters of criminal liability, disregarding for the moment the allocation of the burden of proof, there is little difference between requiring the State to show that an individual's actions are within the circumscribed area, and requiring the defendant to show that his actions are without the circumscribed area: in either case the prohibited range of conduct is the same.

*Id.* at 665, n. 2, 262 S.E. 2d at 303, n. 2.

The matter was further complicated when the constitutionality of shifting to the defendant the burden of proof as to defenses was brought into question by language in *In re Winship*, 397 U.S. 358, 25 L.Ed. 2d 368, 90 S.Ct. 1068 (1970). The United States Supreme Court there wrote, "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact necessary to constitute the crime* with which he is charged." 397 U.S. at 364 (emphasis added). Should the phrase "every fact necessary to constitute the crime" be read broadly to include matters in defense, the traditional distinction drawn by cases such as *Connor* and *Davis* could no longer be upheld. In *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881

(1975), the United States Supreme Court invoked *Winship* to invalidate a shift in the burden of proof as to a matter not formally classified as an element of the crime charged. In response to this decision, our Supreme Court reversed our long-standing rule requiring the defendant in a homicide case to prove to the satisfaction of the jury that he killed in self defense. *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd. on other grounds*, 432 U.S. 233, 53 L.Ed. 2d 306, 97 S.Ct. 2339 (1977). In *Patterson v. New York*, 432 U.S. 197, 53 L.Ed. 2d 281, 97 S.Ct. 2319 (1977), the United States Supreme Court again considered the scope of *Winship*. The Court in *Patterson* upheld a New York law requiring the defendant in a prosecution for second degree murder to carry the burden of persuasion as to the defense of extreme emotional disturbance in order to reduce the charge to manslaughter. In a significant restatement of the *Winship* language quoted above, the Court wrote:

> We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt *all of the elements included in the definition of the offense* of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here.

432 U.S. at 210 (emphasis added).

This Court has since had occasion to consider whether, in light of these United States Supreme Court decisions, an exception to a criminal statute should be regarded as an element of the offense or as an affirmative defense. *State v. Trimble, supra,* involved a criminal statute against putting poisonous foodstuffs in certain public places which provided that the statute "shall not

apply" to poisons used for protecting crops and gardens and for rat extermination. Expressing concern that a purely formalistic or procedural approach to assigning burdens of proof might raise constitutional problems, this Court decided to apply the following standard:

> [W]here, as in the instant case, the General Assembly has left open the question of whether a factor is to be an element of the crime or a defense thereto, it is more substantively reasonable to ask what would be a "fair" allocation of the burden of proof, in light of due process and practical considerations, and then assign as "elements" and "defenses" accordingly, rather than to mechanically hold that a criminal liability factor is an element without regard to the implications in respect to the burden of proof.

*State v. Trimble, supra,* at 666, 262 S.E. 2d at 303. It is this approach which we will apply herein.

The case law suggests various factors to be considered in deciding upon a fair allocation of the burden of proof. *See generally* Note, *The Constitutionality of Affirmative Defenses After Patterson v. New York,* 78 Colum. L. Rev. 655 (1978). One such factor is access to the relevant evidence. In *State v. Connor, supra,* our Supreme Court noted that cases in which the burden of proof as to statutory exceptions from criminal liability had been shifted to the defendant were cases "where the burden was changed by the statute, or the facts referred to in the exception or proviso related to the defendant personally, or were particularly within his knowledge." 142 N.C. at 704, 55 S.E. at 789. This factor was cited by the New York Court of Appeals in justifying the shift of the burden of proof in the *Patterson* case. The state court wrote, "The placing of the burden of proof on the defense, with a lower threshold, however, is fair because of defendant's knowledge or access to the evidence other than his own on the issue." 432 U.S. at 212, n. 13 (quoting *People v. Patterson,* 39 N.Y. 2d 288, 305, 347 N.E. 2d 898, 909 (1976) ). The United States Supreme Court suggested other factors to be considered when it wrote in *Patterson,* "To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." 432 U.S. at 209. Another fac-

tor to be considered in allocating the burden of proof is the importance of the fact at issue to the degree of defendant's culpability. The more critical the fact is to the concept of culpability, the more consistent it is with fundamental notions of fairness to require the State to bear the burden of proof. *See Mullaney v. Wilbur, supra,* 421 U.S. at 696; 78 Colum. L. Rev., *supra,* at 670-671.

The last factor cited above weighs in favor of requiring the State to carry the burden of proof as to the nonexistence of the exceptions recognized by G.S. § 20-145 and § 20-3 of the Charlotte Code since these exceptions, if applicable, relieve the defendant of blame. Similar exceptions to traffic regulations have been recognized even in the absence of statutory provisions. *See* Annot., 9 A.L.R. 367 (1920 and Later Case Service). However, the other factors cited weigh in favor of placing the burden of proof upon the defendant. These exceptions will be applicable to a very small number of cases, and it would be cumbersome to require the State to prove their nonexistence in every prosecution for traffic law violations. Further, the evidence relevant to these exceptions relates to the defendant personally and is particularly within his knowledge. We conclude that it would be a fair allocation of the burden of proof to require a defendant to prove that he comes within the exceptions recognized by G.S. § 20-145 and § 20-3 of the Charlotte Code.

The defendant's testimony tends to show that he received a radio dispatch from Officer Hayes advising that he was in pursuit of a vehicle and needed help, and that defendant responded to this call for assistance. The language of G.S. 20-145 is broad enough to include not only police in direct or immediate pursuit of law violators or suspected violators but also police who receive notice of the pursuit and respond by proceeding to the scene for the purpose of assisting in the chase or apprehension. We find that defendant's evidence was sufficient to bring him within the exemption provided by G.S. 20-145. Therefore, under the evidence in this case the burden is upon the defendant to prove: (1) that he was a police officer acting within the scope of his official duties; (2) that he was operating his vehicle with due regard for the safety of others; and (3) that he was engaged in the chase or apprehension of violators or suspected violators of the law.

The burden of proof required of a defendant as to his affirmative defenses is the satisfaction of the jury. *State v. Leonard*, 296 N.C. 58, 248 S.E. 2d 853 (1978); *State v. Cook*, 263 N.C. 730, 140 S.E. 2d 305 (1965); 2 Stansbury's N.C. Evidence, § 214 (Brandis rev. 1973). We hold that the trial judge herein was correct in requiring the defendant to prove to the satisfaction of the jury that he was acting within the exceptions. This does not mean, however, that the jury instructions herein are without error.

The instructions quoted above required the jury to consider first whether the State had proven a willful, wanton or intentional violation of a safety statute beyond a reasonable doubt. If such was found, the jury was instructed to consider then whether the defendant had proven to the satisfaction of the jury that his conduct was within the exceptions to the safety statutes. If this was also found, the judge instructed the jury to consider then "whether or not the conduct of the defendant, Michael Flaherty, was that which a reasonable and prudent person would exercise in the discharge of official duties of a like nature under like circumstances." This was error. The trial judge's final mandate as to involuntary manslaughter also required the jury to consider this question as the last step in its deliberations on that charge. The burden of proof as to this last step was not specified.

We must consider the instructions "in the context of how a reasonable juror might interpret the words." *See State v. White*, 300 N.C. 494, 506, 268 S.E. 2d 481, 489 (1980). We believe that a reasonable interpretation of the jury instructions in this case would permit the jury to convict the defendant, notwithstanding his proof to the satisfaction of the jury that he was exempt from the safety statutes involved, should the jury find that the defendant had not acted as a reasonable and prudent person in the discharge of official duties of a like nature under like circumstances. This the law will not allow. A law enforcement officer may be held negligent in a civil action if it is proven that he violated such a standard. *Goddard v. Williams*, 251 N.C. 128, 110 S.E. 2d 820 (1959); *Collins v. Christenberry*, 6 N.C. App. 504, 170 S.E. 2d 515 (1969). However, a criminal prosecution for involuntary manslaughter requires proof beyond negligence. "Involuntary manslaughter is the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or

(2) a culpably negligent act or omission. (Citation omitted.)" *State v. Redfern*, 291 N.C. 319, 321, 230 S.E. 2d 152, 153 (1976).

> Culpable negligence in the criminal law requires more than the negligence necessary to sustain a recovery in tort. Rather, for negligence to constitute the basis for the imposition of criminal sanctions, it must be such reckless or careless behavior that the act imports a thoughtless disregard of the consequences of the act or the act shows a heedless indifference to the rights and safety of others. As is stated in 1 Wharton, Criminal Law and Procedure, § 291 at 613 (1957), "There must be negligence of a gross and flagrant character, evincing reckless disregard of human life. . . ."

*State v. Everhart*, 291 N.C. 700, 702, 231 S.E. 2d 604, 606 (1977). Although the trial judge stated in other parts of the instructions herein that the jury had to find the defendant culpably negligent in order to convict him, we believe that a reasonable interpretation of the final step outlined for the jury in the instructions quoted above and in the mandate as to involuntary manslaughter allowed the jury to convict the defendant of involuntary manslaughter on the basis of simple negligence. "[W]here the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part. This is particularly true when the incorrect portion of the charge is the application of the law to the facts. (Citations omitted.)" *State v. Parrish*, 275 N.C. 69, 76, 165 S.E. 2d 230, 235 (1969).

Defendant also argues that the trial judge erred by failing to instruct on the effect of G.S. § 20-156(b), which requires drivers to yield the right-of-way to police vehicles giving a warning signal by appropriate light and siren. We disagree. In *Upchurch v. Funeral Home*, 263 N.C. 560, 140 S.E. 2d 17 (1965), our Supreme Court held that the General Assembly did not intend for the right-of-way privileges accorded by G.S. 20-156(b) to be applied to intersections controlled by automatic traffic lights. Defendant also argues that the trial judge herein erred by failing to define the term "wilful," but we again disagree. This term is common enough to be understood by jurors without being defined in jury instructions. *State v. Jenkins*, 35 N.C. App. 758, 242 S.E. 2d 505, *disc. review denied*, 295 N.C. 470, 246 S.E. 2d 11 (1978).

For the error identified above, the defendant is entitled to a

New trial.

Judges HEDRICK and MARTIN (Harry C.) concur.