NELLIE CHRISTINE HINES, PLAINTIFF v. ROSA E. ARNOLD, DEFENDANT

No. 903SC1076

(Filed 21 May 1991)

**Partnership §§ 1.2, 4 (NCI3d)— existence of partnership—note executed by one partner as agent of partnership—defendant liable on note—jury question**

In an action to recover the balance due on a note, the trial court erred in granting defendant's directed verdict motion where plaintiff produced substantial evidence that defendant and her husband, plaintiff's nephew, entered into a partnership and that defendant's husband executed the note to plaintiff

as an agent of the alleged partnership, thereby making defendant liable on the note.

**Am Jur 2d, Partnership §§ 279 et seq.**

APPEAL by plaintiff from order entered 3 May 1990 in PAMLICO County Superior Court by *Judge James D. Llewellyn.* Heard in the Court of Appeals 16 April 1991.

*Beswick, Graham & Barnhill, P.A., by K. Michael Barnhill, for plaintiff-appellant.*

*S. Henri Johnson for defendant-appellee.*

GREENE, Judge.

Plaintiff appeals from an order entered 3 May 1990 wherein the trial court granted the defendant's directed verdict motion made at the close of the plaintiff's evidence.

Viewed in the light most favorable to the plaintiff, the evidence tends to show the following: In 1967, Rosa Arnold (defendant) married William Arnold (William). Nellie Hines (plaintiff) is William's aunt. In February, 1972, William and the defendant acquired real property in Pamlico County as tenants by the entirety. From early 1980 until 1985, William and the defendant worked together in the commercial fishing business. They also operated a store and marina on their homestead. In the latter part of that time period, they worked together building construction trucks and hauling for hire. During this time period, William was unable to read or write anything other than his name. William testified that he and the defendant ran these family businesses together as partners. The defendant kept the businesses' checkbooks and deposited the money earned from the businesses in William's and the defendant's joint bank account from which the defendant paid their living expenses.

At some time prior to 1980, William and the defendant bought a trawler named "Miss Tiny." They used this trawler in their commercial fishing business until it sank in 1985. Although "Miss Tiny" was titled in William's name alone, he was not aware of this fact. With regard to the other vehicles and equipment that William and the defendant purchased for their businesses, some of them were titled in William's name alone and some of them were titled in the defendant's name alone. Throughout this time period, the parties did not. form a corporation to conduct their

businesses nor did they execute a written contract regarding their alleged partnership.

Between March, 1980 and January, 1981, the plaintiff made three loans by checks to William and the defendant for their businesses totaling $26,883.16. The plaintiff made the three checks out to both William and the defendant. The plaintiff made the first loan for $5,000 in response to a request for money by William and the defendant to help them pay for repairs to and maintenance of their fishing boat. On 14 August 1980, the plaintiff made the second loan to William and the defendant in the amount of $18,883.16. The plaintiff made the third loan of $3,000 to William and the defendant in January, 1981. The plaintiff testified that only the defendant requested this particular loan and furthermore that this loan be in the form of a certified check. The plaintiff complied with the defendant's request.

Between 29 October 1980 and 23 December 1982, the defendant wrote the plaintiff many letters which, among other things, described her active role in their businesses and her desire to pay their debts to the plaintiff. In a letter dated 4 February 1981, the defendant wrote that she and William were in "the Commercial fishing business." In a letter dated 22 May 1981, the defendant wrote that she hoped that the fishing business would pick up so that she could send the plaintiff some money "because I really hate not being able to take care of our debts. . . ." In a letter dated 8 October 1981, the defendant described the preceding summer as having not been profitable. In a letter dated 26 January 1982, the defendant wrote, "[W]e appreciate all you've ever done for us and we'll pay you back just as soon as we can." In a letter dated 27 October 1982, the defendant wrote that she and William were going to "try to make some money to pay you first." Between 1980 and 1982, William and the defendant paid to the plaintiff $650 towards the total loan amount owed to the plaintiff.

In March, 1982, William executed a "FIRST PREFERRED SHIP MORTGAGE PROMISSORY NOTE" and a "FIRST PREFERRED MORTGAGE" against "Miss Tiny" for the plaintiff's benefit in the amount of $26,883.16. The note was payable at no interest on or before 1 April 1987. The defendant did not sign either the note or the mortgage. However, the defendant talked with William about having the note and mortgage drafted and wrote the check to pay for their drafting.

As of 1 April 1987, the plaintiff had received $650 towards the balance due her on the note of March, 1982. She made demands of William and the defendant for payment after 1 April 1987, but William and the defendant did not make further payments to her. On 7 December 1988, the plaintiff filed suit against William and the defendant seeking the balance due on the note. On 20 March 1989, the plaintiff obtained an Entry of Default against William, and on 27 March 1989, she obtained a Default Judgment against William. The plaintiff's suit against the defendant went to trial, and at the close of the plaintiff's evidence, the defendant made a motion for directed verdict, which motion the trial court granted.

---

The issue is whether the plaintiff produced substantial evidence (A) showing the existence of a partnership between William and the defendant and, if so, (B) showing that the defendant is liable on the March, 1982 note.

> The purpose of a motion for directed verdict is to test the legal sufficiency of the evidence for submission to the jury and to support a verdict for the non-moving party. . . . In deciding the motion, the trial court must treat non-movant's evidence as true, considering the evidence in the light most favorable to non-movant, and resolving all inconsistencies, contradictions and conflicts for non-movant, giving non-movant the benefit of all reasonable inferences drawn from the evidence. . . . Non-movant's evidence which raises a mere possibility or conjecture cannot defeat a motion for directed verdict. . . . If, however, non-movant shows *more than a scintilla of evidence*, the court must deny the motion.

*McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. rev. denied*, 327 N.C. 140, 394 S.E.2d 177 (1990) (citations omitted) (emphasis added). "More than a scintilla of evidence" means the same as "substantial evidence." *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). Accordingly, if the non-movant presents such relevant evidence as a reasonable mind might accept as adequate to support the elements of the non-movant's claim or defense, the trial court must deny a motion for a directed verdict.

**HINES v. ARNOLD**

[103 N.C. App. 31 (1991)]

The plaintiff argues that the trial court erred in granting the defendant's directed verdict motion at the close of the plaintiff's evidence because the plaintiff produced substantial evidence showing that William and the defendant entered into partnership and that William executed the note to the plaintiff as an agent of the alleged partnership thereby making the defendant liable on the note. We agree.

A

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." N.C.G.S. § 59-36 (1989). According to our Supreme Court,

> 'A contract, express or implied, is essential to the formation of a partnership.' . . . 'Partnership is a legal concept but the determination of the existence or not of a partnership . . . involves inferences drawn from an analysis of "all the circumstances attendant on its creation and operation," . . . .'
>
> Not only may a partnership be formed orally, but 'it may be created by the agreement or conduct of the parties, either express or implied,' . . . . 'A voluntary association of partners may be shown without proving an express agreement to form a partnership; and a finding of its existence may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners and acted as such.' . . .
>
> Where the fact at issue is the existence of partnership the admissions against interest of the person denying the partnership are significant in establishing it.

*Eggleston v. Eggleston*, 228 N.C. 668, 674-75, 47 S.E.2d 243, 247 (1948) (citations omitted). "The fact that one partner owns certain property in the business, or provides the capital, while the other performs certain services, does not mean that they are not co-owners of the *business." Peed v. Peed*, 72 N.C. App. 549, 555, 325 S.E.2d 275, 280, *cert. denied*, 313 N.C. 604, 330 S.E.2d 612 (1985) (emphasis in original) (husband and wife dairy farm operation). Furthermore, "[t]he receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business . . . ." N.C.G.S. § 59-37 (1989).

When all of the circumstances are viewed in the light most favorable to the plaintiff, there is substantial evidence that William and the defendant established a partnership. The defendant's conduct from 1980 until 1985 is such that a reasonable mind would accept it as adequate to support the conclusion that there existed the contractual, voluntary association of two persons to carry on as co-owners businesses for profit needed to form a partnership. Along with William, the defendant owned real property on which they operated a store and marina. From that location, they operated a trawler. They also built trucks and hauled for hire. William testified that they were partners. The defendant had control of the businesses' checkbooks and money. She used the money they earned from these endeavors to pay their expenses. They purchased the trawler, vehicles, and equipment for their businesses. Finally and of great significance are the defendant's letters to the plaintiff wherein the defendant admitted that she and William were in "the Commercial fishing business," and that the summer of 1981 had not been too profitable for their businesses. Accordingly, the issue of whether there existed a partnership between William and the defendant should be resolved by a jury.

B

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

N.C.G.S. § 59-39(a) (1989). "All partners are jointly and severally liable for the acts and obligations of the partnership." N.C.G.S. § 59-45 (1989).

"Partnership contracts are not usually made in the names of the individual partners. The usual way for a partnership to indicate its liability for money borrowed is to execute the note in its name." *Brewer v. Elks*, 260 N.C. 470, 473, 133 S.E.2d 159, 162 (1963). Nevertheless, when an instrument is not signed in the partnership name and does "not on its face purport to be for the benefit of the partnership," "[t]o establish liability [against the non-signing part-

**HINES v. ARNOLD**

[103 N.C. App. 31 (1991)]

ner], plaintiff must show that the [signing] partner was acting on behalf of the partnership in . . . [executing the instrument] and was authorized to so act; or that the . . . [defendant], with knowledge of the transaction, thereafter ratified" the signing partner's acts. *Id.* at 472-73, 133 S.E.2d at 162; *see also In the Matter of Oxford Plastics v. Goodson*, 74 N.C. App. 256, 261-62, 328 S.E.2d 7, 11 (1985).

Here, William did not sign either the promissory note or mortgage in the name of the alleged partnership. Therefore, the plaintiff had the burden of showing either (1) that William was acting on behalf of the partnership when he executed the note and mortgage and that the defendant had authorized his acts, or (2) that the defendant, with knowledge of the note and mortgage, ratified his acts. With regard to whether William acted on behalf of the alleged partnership when he executed the instruments, William testified that because he and the defendant wanted to make sure the plaintiff would be paid the money that William and the defendant had borrowed from her, William executed the instruments. With regard to the defendant's authorization of William's acts, the plaintiff's evidence shows that the defendant actively sought the loans represented by the promissory note and mortgage. Furthermore, the defendant talked with William about having the note and mortgage drafted and wrote the check to pay for their drafting. With regard to the defendant's ratification of William's acts, the plaintiff's evidence shows that after the instruments had been executed, the defendant wrote the plaintiff a letter stating that she and William were going to "try to make some money to pay you first." The plaintiff's evidence is such that a reasonable mind would accept it as adequate to support the conclusion that William was acting on behalf of the partnership when he executed the instruments and that the defendant authorized and ratified William's acts. Therefore, these issues must be resolved by a jury.

We do not reach the merits of the defendant's statute of limitations argument because she did not raise this affirmative defense in her pleadings or at the trial court. "Where a defendant does not raise an affirmative defense in his pleadings or in the trial, he cannot present it on appeal. *Delp v. Delp*, 53 N.C. App. 72, 76, 280 S.E.2d 27, 30, *disc. rev. denied*, 304 N.C. 194, 285 S.E.2d 97 (1981). Furthermore, we do not address the merits of the plaintiff's argument regarding alleged fraudulent conveyances because she violated N.C.R. App. P. 28(b)(5) in that she failed to reference in her brief the assignment of error supporting the argument. This

part of the plaintiff's appeal is dismissed. N.C.R. App. P. 25(b) and 34(b)(1).

Dismissed in part, reversed in part, and remanded.

Judges PHILLIPS and PARKER concur.