HERMAN BEST v. DUKE UNIVERSITY, TRADING AND DOING BUSINESS AS DUKE
UNIVERSITY HOSPITAL AND DUKE MEDICAL CENTER

No. 9214SC1016

(Filed 16 November 1993)

**1. Malicious Prosecution § 17 (NCI4th) — earlier trespass charge
voluntarily dismissed by State — lack of probable cause — infer-
ence of malice — directed verdict and judgment n.o.v. properly
denied**

In a malicious prosecution action where the State had
earlier voluntarily dismissed a trespass charge against plaintiff
and the jury had returned a verdict of not guilty on the larceny
charge, the trial court properly denied defendant's motions
for directed verdict and judgment n.o.v. and did not abuse
its discretion in denying defendant's motion for new trial, since
a reasonable mind might infer malice from the lack of probable
cause evidenced by the dismissal of the trespass charge.

**Am Jur 2d, Malicious Prosecution §§ 139-190.**

**2. Negligence § 6 (NCI4th) — officers' stop and subsequent arrest
of plaintiff — no negligent infliction of emotional distress**

The trial court did not err in granting defendant's motion
for judgment n.o.v. on the issue of negligent infliction of emo-
tional distress, since the facts in this case did not present
evidence from which a reasonable mind might conclude that
a Duke Public Safety officer who arrested plaintiff conducted
himself differently from a reasonable person in the discharge
of official duties of a like nature under like circumstances,
and plaintiff thus failed to present substantial evidence of
negligent conduct, the first element of his claim for negligent
infliction of emotional distress.

**Am Jur 2d, Fright, Shock, and Mental Disturbance § 2.**

**3. Trespass § 2 (NCI3d) — officers' stop and subsequent arrest
of plaintiff — no intentional infliction of emotional distress**

The trial court did not err in directing verdict for defend-
ant in plaintiff's action for intentional infliction of emotional
distress, since the officers' conduct in stopping and later ar-
resting plaintiff could not reasonably be regarded as extreme

or outrageous, and there was no evidence that the officers intended to cause plaintiff severe emotional distress.

**Am Jur 2d, Fright, Shock, and Mental Disturbance § 2.**

4. **Damages § 127 (NCI4th) — officers' stop and subsequent arrest of plaintiff — no evidence of malice — directed verdict on punitive damages claim proper**

The trial court did not err in granting defendant's motion for directed verdict on the issue of punitive damages where a reasonable mind would not accept the evidence as adequate to show that the officers' conduct in stopping and later arresting plaintiff amounted to the actual malice necessary to sustain a claim for punitive damages.

**Am Jur 2d, Damages § 731 et seq.**

Judge ORR concurring in the result only.

Appeal by plaintiff and defendant from judgment entered 22 May 1992 in Durham County Superior Court by Judge A. Leon Stanback, Jr. Heard in the Court of Appeals 17 September 1993.

*Robert R. Seidel and R. Marie Sides for plaintiff-appellant/appellee.*

*Patterson, Dilthey, Clay & Bryson, by Robert M. Clay, and Cranfill, Sumner & Hartzog, by Theodore B. Smyth and Kari Lynn Russwurm, for defendant-appellee/appellant.*

GREENE, Judge.

Herman Best (plaintiff) brought the instant action against Duke University (defendant) and asserted causes of action for malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. At the close of the plaintiff's evidence, defendant moved for directed verdict as to all of plaintiff's claims. The motions were granted for intentional infliction of emotional distress and punitive damages. The claims for malicious prosecution and negligent infliction of emotional distress were submitted to the jury which rendered a verdict against defendant on both claims. On 28 February 1992, the jury awarded plaintiff $40,000 in damages for malicious prosecution and $60,000 in damages for negligent infliction of emotional distress. On 9 March 1992, defendant filed motions for judgment notwith-

standing the verdict and new trial. The trial court denied defendant's motions as to the malicious prosecution claim and granted defendant's motion for judgment notwithstanding the verdict as to negligent infliction of emotional distress. The court additionally ruled that if its granting of defendant's motion for judgment notwithstanding the verdict was overturned on appeal, defendant would be entitled to a new trial. Defendant appeals from the trial court's denial of defendant's motions as to the malicious prosecution claim. Plaintiff appeals from the trial court's granting of defendant's motions as to the remaining three claims.

The evidence in the light most favorable to the plaintiff is as follows: Around 3:00 or 3:30 a.m. on 26 August 1989, plaintiff was having trouble sleeping and decided to go get something to eat. While out, he decided to take his patio furniture, three chairs and a table all blue in color, which he had promised to give to a friend.

On the way to his friend's house around 4:30 or 5:00 a.m., plaintiff, realizing he was going in the wrong direction, took a right onto Faculty Club Drive, pulled into a gravel parking lot, and turned around. Plaintiff had his lights on the entire time, and the maneuver took less than a minute. As plaintiff was about to pull onto Science Drive, he noticed a blue car which passed by slowly with the brake lights shining and the driver looking at plaintiff. Plaintiff was suspicious of the car because it did not have North Carolina tags and turned in the opposite direction the car was heading. Plaintiff, hoping to find some people, drove to the Washington Duke Hotel. Seeing no one, plaintiff started to leave when he noticed the blue car pulled at an angle across Science Drive in front of him. A man wearing a dark blazer, a dark pair of pants, and a dress shirt was standing outside the car and waving his arms. Plaintiff was scared and drove by the car and continued onto Highway 751. The car, flashing its headlights, followed plaintiff onto 751 and then onto Erwin Road. The car pulled up beside plaintiff, and the driver rolled down his passenger window and showed plaintiff what appeared to be a badge. Plaintiff then saw a Durham police car approaching and pulled over.

The blue car and the police car pulled in behind plaintiff, and Detective McDonald Vick (Vick), the man driving the blue car, approached plaintiff's car and asked plaintiff what he was doing out at such a late hour. Plaintiff explained that he was taking

furniture to a friend's house. When asked if he had stolen the furniture, he replied no, that it was his.

At this point, Officer Steven Russell (Russell) of Duke Public Safety arrived and after speaking with Vick, questioned plaintiff. With a flashlight, Russell looked at the furniture through the windows of plaintiff's car and checked it for Duke University ID stickers. Russell sent another officer, Officer Schwab (Schwab), to check the Duke University Faculty Club to see if any furniture was missing. While Schwab was checking the Faculty Club, the plaintiff and Russell discovered they knew each other since Russell occasionally patrols the emergency room at Duke Hospital where plaintiff worked. After they carried on a twenty-five to thirty minute conversation, Schwab returned and said he did not see anything missing from the Faculty Club. The officers told plaintiff he was free to go. Plaintiff then went to his friend's house and assembled the furniture.

Upon returning to work at 7:00 p.m. on 26 August 1989, Russell read a larceny report from Duke Faculty Club. The report described the stolen property as two tables and seven chairs, all gray in color, and did not say anything as to style, design, or construction. After reading the report, Russell, without any further investigation, obtained from the magistrate warrants against plaintiff for felony larceny and second-degree trespass. Russell and Schwab, one of them wearing a gun, went to plaintiff's place of employment, Duke University Medical Center, and arrested plaintiff. Russell asked plaintiff if he needed to get anything before they left, and plaintiff said yes. The officers followed plaintiff through his work area as he went to get his belongings. The officers then led him out a service door past several co-workers and handcuffed him in view of the co-workers and put him in a Duke Public Safety car. Plaintiff testified he was stunned, embarrassed, and very humiliated.

As a result of his arrest, plaintiff was suspended without pay and eventually fired. Plaintiff testified that he was overwhelmed by the course of events and that it was the worst thing that ever happened to him. Plaintiff eventually contacted and began treatment with Dr. Carolyn Burgess (Burgess), a psychologist. Burgess testified that plaintiff had multiple things happening to him which caused him anguish and depression. The worst occurrence was being arrested and losing his job because the experience destroyed his self-esteem. She testified he experienced helplessness and despair

and was experiencing "dwindle," which was defined as experiencing the maximum amount of stress. Because he could no longer afford treatment, plaintiff only visited Burgess six times, even though Burgess felt he needed extended treatment.

Plaintiff pled not guilty to both charges at his criminal trial. The State took a voluntary dismissal as to the trespass charge "at the close of the State's evidence." Plaintiff was found not guilty as to the larceny charge.

---

The issues presented are whether the trial court erred in: (I) denying defendant's motions for directed verdict, judgment notwithstanding the verdict, and new trial as to malicious prosecution; (II) granting defendant's motion for judgment notwithstanding the verdict as to the claim of negligent infliction of emotional distress and directing that if the judgment notwithstanding the verdict is reversed on appeal, then defendant shall receive a new trial; (III) granting defendant's motion for directed verdict as to the claim of intentional infliction of emotional distress; and (IV) granting defendant's motion for directed verdict as to the claim of punitive damages.

I

MALICIOUS PROSECUTION

[1] Defendant contends that it was error for the trial court to deny its motions for directed verdict, judgment notwithstanding the verdict, and new trial as to the issue of malicious prosecution because there was not sufficient evidence of lack of probable cause and malice. We disagree.

In a malicious prosecution claim, the plaintiff must show: (1) initiation by the defendant of an earlier proceeding; (2) lack of probable cause for such initiation; (3) malice, either actual or implied; (4) termination of the earlier proceeding in favor of the plaintiff. *Jones v. Gwynne*, 312 N.C. 393, 397, 323 S.E.2d 9, 11 (1984). In the instant case, the existence of the first and fourth elements is undisputed; therefore, the question is whether there was substantial evidence of malice and lack of probable cause presented at trial. *See Hines v. Arnold*, 103 N.C. App. 31, 34, 404 S.E.2d 179, 181 (1991) (in deciding motion for directed verdict, if non-movant presents substantial evidence, court must deny motion). Substantial evidence is such relevant evidence as a reasonable mind might

**BEST v. DUKE UNIVERSITY**

[112 N.C. App. 548 (1993)]

accept as adequate to support a conclusion. *Id.; see Moon v. Bostian Heights Volunteer Fire Dept.*, 97 N.C. App. 110, 111, 387 S.E.2d 225, 226 (1990) (standards for deciding motion for judgment notwithstanding the verdict same as those for directed verdict).

Probable cause is defined "as the existence of such facts and circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution." *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978). A plaintiff makes a prima facie showing of the absence of probable cause by evidence of a voluntary dismissal of the prosecution by the State with no reason assigned for the dismissal. *Id.; but see* W. Page Keeton et al, *Prosser & Keeton on the Law of Torts* § 119, at 881 (5th ed. 1984) (usually, abandonment by public prosecutor is not, standing alone, prima facie evidence that probable cause is lacking). In determining the effect of a voluntary dismissal by the State, the reasons for the entry of dismissal should be taken into account. *See Exxon Corp. v. Kelly*, 281 Md. 689, 695, 381 A.2d 1146, 1150 (1978) (evidentiary effect of *nolle prosequi* depends on circumstances of entry).

At plaintiff's criminal trial, the State voluntarily dismissed the trespass charge, and the jury returned a verdict of not guilty on the larceny charge. Looking at the evidence in the light most favorable to plaintiff, *Hitchcock v. Cullerton*, 82 N.C. App. 296, 297, 346 S.E.2d 215, 217 (1986), the reason for the State's dismissal of the trespass charge was never established. Consequently, the voluntary dismissal of the trespass charge is prima facie evidence of the absence of probable cause under *Pitt*, and a reasonable mind might accept this dismissal as adequate to support a conclusion of lack of probable cause.

Plaintiff must also show substantial evidence of either express or implied malice, *Pitts*, 296 N.C. at 86-87, 249 S.E.2d at 379, which is defined as a wrongful act intentionally done. *Stancill v. Underwood*, 188 N.C. 475, 478, 124 S.E. 845, 847 (1924). Malice may be inferred from proof that defendant lacked probable cause in initiating the proceedings. *Pitts*, 296 N.C. at 86-87, 249 S.E.2d at 379. Since a reasonable mind might infer malice from the lack of probable cause evidenced by the dismissal of the trespass charge, the trial court properly denied the motions for directed verdict and judgment notwithstanding the verdict. Additionally, there was no abuse of discretion by the trial court in denying the motion for new trial.

*Blow v. Shaughnessy*, 88 N.C. App. 484, 494, 364 S.E.2d 444, 449 (1988) (trial court's decision on motion for new trial not reviewable absent manifest abuse of discretion).

II

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

[2] Plaintiff contends that it was error for the trial court to grant defendant's motion for judgment notwithstanding the verdict on the issue of negligent infliction of emotional distress and in directing that if the judgment notwithstanding the verdict is reversed on appeal then defendant shall receive. a new trial. We disagree.

To survive a motion for directed verdict on a claim for negligent infliction of emotional distress, the plaintiff must show evidence a reasonable mind might accept as adequate to support a finding of each of the following: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) the conduct did in fact cause the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). For a law enforcement officer to be held negligent, the standard is that care a reasonable and prudent person in the discharge of official duties of a like nature under like circumstances should exercise. *State v. Flaherty*, 55 N.C. App. 14, 23, 284 S.E.2d 565, 572 (1981).

The uncontroverted evidence is that in the early morning hours of 26 August 1989, Vick noticed plaintiff driving in the vicinity of the Faculty Club and the Washington-Duke Hotel. Vick attempted to stop plaintiff; however, he drove by Vick who pursued him. Plaintiff stopped after Vick flashed what appeared to be a badge and the Durham Police had arrived. The officers, including Russell, noticed patio furniture in plaintiff's car. Plaintiff was allowed to leave when it could not be determined that any furniture had been taken from the Faculty Club.

Later that evening, Russell learned that patio furniture was missing from the Faculty Club. Subsequently, Russell obtained a warrant from a magistrate based on Vick's report placing plaintiff in the area of the Faculty Club around 4:30 or 5:00 a.m. and Russell's personal observation in plaintiff's car of furniture similar to the property described as stolen from the Faculty Club on 26 August

1989. Russell and another officer, one of them wearing a gun, went to plaintiff's place of employment and arrested him. Although Russell testified that "it's in the officer's discretion" whether to handcuff someone when making an arrest and although Russell knew plaintiff and knew where he worked, Russell handcuffed plaintiff and put him in the back seat of a Duke Public Safety Car while some of plaintiff's co-workers looked on. Plaintiff underwent treatment with a psychologist who testified that plaintiff's experiences with the course of events left him with feelings of depression, anguish, and despair.

The facts in this case do not present evidence from which a reasonable mind might conclude Russell conducted himself differently than a reasonable person in the discharge of official duties of a like nature under like circumstances. Because plaintiff failed to present substantial evidence of negligent conduct, the first element of his claim for negligent infliction of emotional distress, we hold that the trial court did not err in granting defendant's motion for judgment notwithstanding the verdict. Therefore, it is unnecessary to address the trial court's order that if the judgment notwithstanding the verdict is reversed on appeal, defendant shall receive a new trial.

### III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

[3] Plaintiff further contends that a reasonable mind might find plaintiff's evidence adequate to support a conclusion of intentional infliction of emotional distress. We disagree.

In order to survive a directed verdict motion for intentional infliction of emotional distress, the plaintiff must show substantial evidence of (1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress to the plaintiff. *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). Whether or not conduct may reasonably be regarded as extreme and outrageous is initially a question of law for the court. *Briggs v. Rosenthal*, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985).

In order for conduct to give rise to liability for intentional infliction of emotional distress, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized community." *Id.* at 677, 327 S.E.2d at 311; *Restatement (Second) of Torts* § 46 cmt. d (1989). We hold, after reviewing the officers' conduct in stopping and later arresting plaintiff, that such conduct may not be reasonably regarded as extreme or outrageous. Furthermore, there was no evidence that the officers intended to cause the plaintiff severe emotional distress. Therefore, it was not error to grant defendant's motion for directed verdict.

## IV

### Punitive Damages

[4] Plaintiff's final contention is that it was error for the trial court to grant defendant's directed verdict motion as to punitive damages because plaintiff presented substantial evidence on that issue. We disagree.

To be entitled to punitive damages, plaintiff, beyond establishing cause of action, must also show that a reasonable mind might find evidence adequate to support a conclusion of aggravating circumstances such as malicious, wanton, and reckless injury. *Hawkins v. Hawkins*, 101 N.C. App. 529, 534, 400 S.E.2d 472, 475, *disc. rev. allowed*, 329 N.C. 496, 407 S.E.2d 533 (1991), *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992). In order to recover punitive damages in a malicious prosecution case, the plaintiff must show he was wrongfully prosecuted from actual malice, defined as "ill-will, spite, or desire for revenge, or under circumstances of insult, rudeness or oppression, or in a manner evidencing a reckless and wanton disregard of plaintiff's rights." *Williams v. Kuppenheimer Mfg. Co.*, 105 N.C. App. 198, 202-03, 412 S.E.2d 897, 901 (1992). A reasonable mind would not accept the evidence as adequate to show that the officers' conduct amounted to the actual malice necessary to sustain a claim for punitive damages. Therefore, the trial court did not err in granting defendant's motion for directed verdict as to the issue of punitive damages.

No error.

Judge EAGLES concurs.

Judge ORR concurs in the result with separate opinion.

**CATAWBA MEMORIAL HOSPITAL v. N.C. DEPT. OF HUMAN RESOURCES**

[112 N.C. App. 557 (1993)]

Judge ORR concurring in the result only.

I am compelled by the referenced precedent in this case to concur in the result affirming the trial court's denial of defendant's motion for a directed verdict on the issue of malicious prosecution. As I understand the cited authority, a malicious prosecution case is jury bound by introduction of evidence that an unexplained dismissal was taken in a criminal prosecution. The dismissal operates as a "favorable termination" of the action for a plaintiff. *Jones v. Gwynne*, 312 N.C. 393, 323 S.E.2d 9 (1984). "Lack of probable cause" is *prima facie* established thereafter by the voluntary dismissal without explanation. *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 249 S.E.2d 375 (1978). Next, "malice" may be inferred from proof that the defendant lacked probable cause in initiating the proceedings. *Pitts, supra.*

Therefore, such a "bootstrap" process means that every dismissal of a criminal action without explanation opens the door to a malicious prosecution case and gets the case to the jury on the mere fact that a dismissal without explanation has taken place. That appears to be the law as it now stands, but the implication of such a standard in light of our overcrowded criminal dockets should prompt a reconsideration of this question.