16 F.3d 410
 127 Lab.Cas. P 57,619, 3 A.D. Cases 96
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wayne J. MITCHELL, Plaintiff-Appellant,
v.
LYDALL, INCORPORATED, Defendant-Appellee.
 No. 93-1374.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1993.
Decided Feb. 10, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Salisbury. William L. Osteen, Sr., District Judge. (CA-91-358-4)
 Nancy Pulliam Quinn, David & Quinn, Greensboro, NC, for appellant.
 Loren Keith Allison, Gallucci, Hopkins & Theisen, P.C., Fort Wayne, IN, for appellee.
 Penni P. Bradshaw, Louis W. Doherty, Petree, Stockton, Winston-Salem, NC, for appellee.
 M.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, MICHAEL, Circuit Judge, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff-appellant, Wayne J. Mitchell, brought this diversity action against his former employer, Lydall, Inc. ("Lydall"), alleging claims under North Carolina law for handicap discrimination, intentional and negligent infliction of emotional distress, and punitive damages. The district court (1) dismissed the emotional distress claims and struck the punitive damages claim pursuant to Fed.R.Civ.P. 12(b)(6) and 12(f), respectively, and (2) after discovery, granted summary judgment for Lydall on Mitchell's handicap discrimination claim. Finding no error, we affirm.
 
 I.
 
 2
 In January of 1990, Mitchell began working as a supervisor for Lydall, a manufacturer of medical supplies. When he was hired, Mitchell understood that he was an at-will employee and that Lydall "reserved its right to terminate [his] employment at any time."
 
 
 3
 In October of 1990, Mitchell was diagnosed with Multiple Sclerosis ("MS"). At the time of the diagnosis, Mitchell worked approximately sixty hours per week in a stressful managerial position. After he was diagnosed with MS, Mitchell told Lydall that his doctors recommended that he reduce both his hours (to no more than forty per week) and the amount of stress at work. Lydall then contacted several MS support organizations and health care providers to obtain information about the types of jobs suitable for a person with MS. Thereafter, Lydall created a new position for Mitchell to accommodate his disability. The position was designed to require fewer work hours and to be less stressful because Mitchell would no longer have to supervise other employees. In addition, on the recommendation of Mitchell's psychiatrist, Lydall arranged for regular meetings between Mitchell and his supervisor to discuss Mitchell's performance in his new position. Mitchell did not object to his new position, nor did he offer any suggestions about other possible accommodations for his condition.
 
 
 4
 According to Lydall, Mitchell performed inadequately in his new job, and on several occasions Lydall discussed with Mitchell his substandard performance.[1] On March 6, 1991, Mitchell was given verbal and written warnings which essentially asserted that his inadequate performance and poor attitude were causing problems. Mitchell responded in part by saying, "I hate this God Damn place and dread coming to work every day."
 
 
 5
 Lydall alleges that Mitchell's performance problems continued. On March 15, 1991, Mitchell was called to the office of Lydall's president for a meeting at which Lydall planned to issue a final written warning. After the meeting was under way, Mitchell objected to continuing the meeting in the absence of his lawyer. Mitchell was warned twice that his failure to participate in the meeting would constitute insubordination. Despite these warnings, Mitchell walked out of the meeting, went to his office to gather his belongings, and left the premises. Several days later, Lydall sent a letter to Mitchell to "confirm[ ] that [his] position has been terminated due to insubordination" at the March 15 meeting.
 
 
 6
 Mitchell subsequently filed a complaint against Lydall asserting claims for: (1) handicap discrimination pursuant to N.C. Gen.Stat. Sec. 168A, (2) intentional and negligent infliction of emotional distress, and (3) punitive damages. The district court granted Lydall's motion to dismiss both emotional distress claims pursuant to Fed.R.Civ.P. 12(b)(6) and granted Lydall's motion to strike the punitive damages claim pursuant to Fed.R.Civ.P. 12(f). After discovery, the district court granted Lydall's motion for summary judgment on Mitchell's handicap discrimination claim. Mitchell appealed all of these decisions. We review them de novo and affirm for the following reasons.
 
 II.
 A. The Handicap Discrimination Claim
 
 7
 The North Carolina Handicapped Persons Protection Act (the "Act") prohibits employers from "discharg[ing], or otherwise ... discriminat[ing] against a qualified handicapped person on the basis of a handicapping condition." N.C. Gen.Stat. Sec. 168A-5(a)(1). It is undisputed that MS is a "handicapping condition." Mitchell alleges that Lydall discriminated against him by failing to make reasonable accommodations for his handicapping condition (as required by section 168A-4 of the Act) and by subsequently discharging him.[2]
 
 
 8
 1. Failure to make reasonable accommodations
 
 
 9
 Mitchell claims that Lydall failed to make reasonable accommodations because: (1) Lydall could have modified Mitchell's prior managerial position by hiring an additional employee to share Mitchell's workload instead of creating a new position for him at a reduced salary, (2) Lydall required Mitchell to attend a disciplinary meeting without his counsel being present, and (3) Lydall created a hostile atmosphere in the bi-weekly review meetings.
 
 
 10
 As to Lydall's failure to hire an additional employee: The Act explicitly precludes a finding of discrimination on this ground. " '[R]easonable accommodation' does not require that an employer: 1. Hire one or more employees ... for the purpose, in whole or in part, of enabling the handicapped person to be employed...." Id. Sec. 168A3(10)(a)(1). Moreover, Mitchell's new salary was higher than that of any other employee in his department, except his supervisor.
 
 
 11
 As to the denial of Mitchell's request to have his lawyer present at the March 15, 1991, "final warning" meeting: Nothing in the Act or in the record allows us to find that this was discrimination. Lydall had a policy of never permitting lawyers to participate in such meetings. And, the Act provides employers with an affirmative defense when a handicapped employee fails to comply with the employer's work policies. See id. Sec. 168A-9(1).
 
 
 12
 Finally, as to the allegedly hostile atmosphere of the bi-weekly review meetings: Mitchell did not raise this claim below. In any event, Mitchell does not point us to anything in the record to support his contention that the meetings were hostile.
 
 2. Lydall's discharge of Mitchell
 
 13
 The parties dispute whether Mitchell was discharged or whether he resigned. Assuming that Mitchell was discharged, the record indicates that Mitchell was discharged not on the basis of his handicapping condition, but rather for his insubordination (walking out of the meeting). The Act makes clear that employers have an affirmative defense to a discrimination claim when a handicapped person fails "to comply with or meet the employer's work rules and policies or performance standards, provided that such person is not held to rules or standards different from other non-handicapped employees similarly employed...." Id. On the discharge issue, the district court concluded: "It is undisputed that insubordination is reason enough for dismissal and Mitchell forecasts no evidence to show that he was treated differently than any other employee as to insubordination." We agree.
 
 3. Conclusion
 
 14
 The district court properly granted summary judgment for Lydall on Mitchell's handicap discrimination claim.
 
 B. The Emotional Distress Claims
 
 15
 Mitchell alleges that he is entitled to damages for Lydall's intentional and negligent infliction of emotional distress. Mitchell says he suffered emotional distress because of Lydall's failure to reasonably accommodate his disability and because of his discharge.
 
 
 16
 To state a claim under North Carolina law for an intentional infliction of emotional distress, a plaintiff must demonstrate, inter alia, that the defendant engaged in "extreme and outrageous conduct." Hall v. Post, 372 S.E.2d 711, 716 (N.C.1988); see Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. Ct.App.1985) (holding that the conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' " (quoting RESTATEMENT (SECOND) OF TORTS Sec. 46, cmt. d (1965)), cert. denied, 332 S.E.2d 479 (N.C.1985). Whether a complaint sufficiently alleges outrageous conduct initially is a question of law. Best v. Duke Univ., 436 S.E.2d 395, 400 (N.C. Ct.App.1993).
 
 
 17
 The district court compared Lydall's alleged conduct, as set forth in Mitchell's complaint, with the conduct alleged in several North Carolina intentional infliction cases. The district court concluded that Lydall's alleged conduct did "not rise to the level of intolerable behavior required for a claim of intentional infliction of emotional distress under North Carolina law." We agree, and affirm the district court's Rule 12(b)(6) dismissal of this claim.
 
 
 18
 The district court likewise dismissed Mitchell's negligent infliction of emotional distress claim after holding that this tort requires a showing of outrageous conduct. We decline to review that holding because we believe the negligent infliction claim should have been dismissed for a more basic reason: Mitchell's complaint does not allege any negligent acts by Lydall. See Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C.1990) ("to state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, ..."). Mitchell's complaint contains merely a single, conclusory allegation that Lydall was negligent; the material factual allegations charge nothing but intentional acts by Lydall in failing to accommodate Mitchell's MS condition and in discharging him. Taking these material factual allegations as true and construing them in the light most favorable to Mitchell, see Finlator v. Powers, 902 F.2d 1158, 1160 (4th Cir.1990), we must conclude that they do not state a claim for negligent infliction of emotional distress.
 
 C. Punitive Damages
 
 19
 Under North Carolina law, a plaintiff cannot maintain an independent claim for punitive damages. "[P]unitive damages ... may only be awarded when a cause of action otherwise exists in which at least nominal damages are recoverable by the plaintiff." Shugar v. Guill, 283 S.E.2d 507, 509 (N.C.1981). Because the district court properly held that Mitchell's complaint failed to state a claim in tort, and the Act does not provide for punitive damages, we hold that the district court did not err in striking Mitchell's claim for punitive damages under Rule 12(f).
 
 III.
 
 20
 The judgments of the district court are affirmed.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Mitchell denies that his performance was in fact deficient, contending that "[m]any perceive [sic] deficiencies in Appellant's performance can be attributed to inadequate information ... as to the true status of the situation." Appellant's Br. at 13. However, any factual issue about Mitchell's job performance is not material to our decision. It was Mitchell's undisputed conduct in a "final warning" meeting with company officials that triggered his departure from Lydall. In addition, even if Lydall was wrong in its assessment of Mitchell's performance, that would not advance his claim that Lydall failed to make reasonable accommodations for his condition
 
 
 [2]
 We determine whether Lydall is entitled to summary judgment on the handicap discrimination claim under the prescribed standard. Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Catawba Indian Tribe v. South Carolina, 978 F.2d 1334, 1339 (4th Cir.1992), cert. denied, 113 S.Ct. 1415 (1993)