SAMMY E. ESTRIDGE, III, Plaintiff-Appellee v. HOUSECALLS HEALTHCARE GROUP, INC.; TERRY JUDSON WARD; CAROL WARD; and CHRISTINE STEWART, Defendants-Appellants

No. COA97-1534

(Filed 29 December 1998)

## 1. Malicious Prosecution— co-employee and owner's wife not liable

Plaintiff former employee's co-employee could not be held liable to plaintiff for malicious prosecution, although she reported to her employer that she believed that plaintiff was holding the employer's cellular telephone and pager hostage until he received his final paycheck, where she reported plaintiff's conduct to the magistrate at the employer's direction, she had no knowledge that the phone and pager had been returned, and the

ESTRIDGE v. HOUSECALLS HEALTHCARE GRP., INC.

[131 N.C. App. 744 (1998)]

magistrate issued a warrant charging plaintiff with conversion by a bailee. Nor could the wife of the employer's owner be liable to plaintiff for malicious prosecution where there was no evidence that she had any part in the initiation of the criminal proceeding against plaintiff.

**2. Malicious Prosecution— action against former employer and owner—sufficient evidence**

Plaintiff's evidence was sufficient to be submitted to the jury in an action against his former employer and the employer's owner for malicious prosecution of charges against plaintiff for conversion by a bailee of a cellular phone and a pager.

**3. Damages and Remedies— compensatory damages—lump sum—new trial for two defendants**

A new trial must be awarded as to defendant employer and defendant owner on the damages issue in plaintiff former employee's malicious prosecution action where the jury returned a compensatory damages verdict of $30,000 against all four defendants for malicious prosecution and abuse of process; the evidence was insufficient against all defendants on the abuse of process claim and against the other two defendants on the malicious prosecution claim; and it cannot be determined what portion of the damages was attributable to the malicious prosecution by defendant employer and defendant owner.

**4. Abuse of Process— insufficient evidence**

Plaintiff's evidence was insufficient to support his claim of abuse of process against his former employer's owner and the owner's wife (the Wards) where it tended to show only that, after an assistant district attorney stated that a charge against plaintiff for conversion by a bailee of a cellular telephone and a pager would be dismissed because the property had been returned to the employer, Mrs. Ward stated that "that's not the point" and both of the Wards sought to have the assistant district attorney proceed with the trial, since there was no evidence of any improper use of the legal process after the issuance of the criminal summons.

**5. Evidence— employer's Medicaid over-billing—irrelevancy to unpaid wages, malicious prosecution, abuse of process**

Evidence of defendant employer's alleged over-billing practices with respect to Medicaid and an investigation by the State of

ESTRIDGE v. HOUSECALLS HEALTHCARE GRP., INC.

[131 N.C. App. 744 (1998)]

those practices was not relevant to plaintiff former employee's claims for unpaid wages, abuse of process and malicious prosecution of a charge of conversion of a cellular phone and a pager owned by the employer where plaintiff offered no evidence to connect his information about the over-billing practices with the actions of defendants in causing a warrant to be issued against him for conversion of the employer's property. Furthermore, the prejudicial effect of this evidence on the jury far outweighed its slight probative value. N.C.G.S. § 8C-1, Rule 403.

**6. Evidence— corroboration—testimony beyond that corroborated—inadmissibility**

An expert's testimony was inadmissible to corroborate plaintiff's testimony concerning defendant employer's alleged over-billing practices for Medicaid because his testimony about over-billing by submitting multiple bills for the same services and doubling up in subsequent billings and the total amount of the alleged over-billing went far beyond plaintiff's testimony that defendant submitted multiple bills for the same services.

Chief Judge EAGLES dissenting.

Appeal by defendants from judgment entered by Judge Peter M. McHugh on 23 May 1997 in Guilford County Superior Court. Heard in the Court of Appeals 24 August 1998.

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr., and Robert C. Cone for plaintiff appellee.*

*Smith Helms Mulliss & Moore, L.L.P., by J. Donald Cowan, Jr., James G. Exum, Jr., and Paul K. Sun, Jr., for defendant appellants.*

HORTON, Judge.

Sammy E. Estridge, III (plaintiff), is a Certified Public Accountant and a Certified Internal Auditor. Plaintiff instituted this action on 27 October 1995 against Housecalls Healthcare Group, Inc. (Housecalls), Terry Ward (Mr. Ward), Carol Ward (Mrs. Ward), and Christine Stewart (Ms. Stewart) (collectively defendants), seeking damages for unpaid wages, malicious prosecution, and abuse of process.

The facts in this case are as follows: Plaintiff was employed by Housecalls Home Health Care, a wholly owned subsidiary of

ESTRIDGE v. HOUSECALLS HEALTHCARE GRP., INC.

[131 N.C. App. 744 (1998)]

Housecalls, in March 1995 as Assistant Controller. Several months later, he was promoted to Controller. Housecalls is a statewide provider of in-home health care services and primarily provides services for Medicaid-eligible patients utilizing part-time nurses. Housecalls pays the nurses and then bills Medicaid for reimbursement.

At trial, plaintiff testified that Housecalls did not have an adequate accounting system so there was no assurance that receipts would be correctly recorded nor a system to prevent the possibility of double billing. Plaintiff made suggestions for improving the system but contends his suggestions were largely ignored. Mr. Ward, on the other hand, stated that many of the recommendations were implemented.

On Saturday, 2 September 1995, Mr. Ward, the owner of Housecalls, required plaintiff to attend a meeting at the office and then remain at the office to complete a project. Later that afternoon, plaintiff and his wife discussed his employment with Housecalls, and plaintiff decided to resign. Plaintiff prepared a letter of resignation citing problems with the accounting system which caused him "multiple ethical dilemmas" and posted several copies of the letter in the office building. Plaintiff stated his resignation was effective immediately but offered to act as an independent consultant for an additional ten business days.

According to plaintiff, Mr. Ward paged plaintiff the following morning and left a message on his voice mail directing plaintiff to return the company keys. Mr. Ward testified, however, that he also directed plaintiff to return any other property of Housecalls at once. Plaintiff testified that he returned Mr. Ward's call and stated that he would bring the keys to Housecalls on Tuesday morning while Mr. Ward testified that plaintiff did not say anything about returning the company property.

According to plaintiff, on the following Tuesday morning, he turned his keys over to Ms. Stewart. Plaintiff testified that he told Ms. Stewart that he would bring the pager and cell phone back on Friday when he received his paycheck, or earlier if they were needed. Plaintiff left a note with the keys requesting that he be informed whether he would be needed during the ensuing ten-day period and when he was to bring the equipment back. Ms. Stewart testified that plaintiff told her that he would not return the cell phone and pager

until he received his final paycheck, and she believed that he was therefore holding the property hostage.

Mr. Ward then instructed Ms. Stewart to go to a magistrate on that same Tuesday morning, 5 September 1995, and explain the situation. The magistrate issued a warrant charging conversion by a bailee of the pager and cell phone in violation of N.C. Gen. Stat. § 14-168.1 (1993). On Tuesday evening, plaintiff went to the Housecalls office and turned in all the equipment to Lisa Saunders and obtained a receipt from her. He was not aware of the warrant which had been issued at that time and did not learn about the warrant until 16 September 1995.

When the criminal case came on for trial, Mr. Ward's wife was present and discussed the case with the prosecutor. The Assistant District Attorney Mary Hedrick (Ms. Hedrick) dismissed the case because the property had been returned. Mrs. Ward testified that she did not want the case dismissed and informed Ms. Hedrick of this wish and asked if Mr. Ward could be contacted. Mr. Ward also informed Ms. Hedrick that he wanted the case to be prosecuted, but understood that the decision was Ms. Hedrick's to make.

Plaintiff filed this civil action approximately two weeks after the criminal case was dismissed. The jury entered verdicts against defendants for $1,295.93 in unpaid wages and $30,000.00 for compensatory damages for the criminal prosecution. The jury awarded punitive damages against defendants as follows: Housecalls, $1.5 million; Mr. Ward, $1.5 million; Mrs. Ward, $1.0 million; and Ms. Stewart, $1. The trial court denied defendants' motions for judgment notwithstanding the verdict or a new trial, and entered judgment based on the jury verdict. Defendants appealed.

The issues are whether: (I) the trial court erred in denying defendants' motions for directed verdict and JNOV on the (A) malicious prosecution and (B) abuse of process claims and (II) the trial court erred in admitting evidence of Housecalls' billing practices.

I

In reviewing the denial of a motion for directed verdict or a JNOV, this Court must determine whether substantial evidence of a claim was presented when all of the evidence is taken in the light most favorable to the non-moving party and all inconsistencies are resolved in the light most favorable to the non-moving party. *Asfar v. Charlotte Auto Auction, Inc.*, 127 N.C. App. 502, 504, 490 S.E.2d

598, 600 (1997), *disc. review denied*, 347 N.C. 572, 498 S.E.2d 376 (1998).

## A

## Malicious Prosecution Claim

The elements for a malicious prosecution claim are the following: "(1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Best v. Duke University*, 337 N.C. 742, 749, 448 S.E.2d 506, 510, *reh'g denied*, 338 N.C. 525, 452 S.E.2d 807 (1994). Defendants contend that Ms. Stewart and Mrs. Ward did not engage in malicious prosecution because all of the elements of the action were not present. We agree.

[1] Although the fourth element of malicious prosecution, termination of the earlier proceeding in favor of plaintiff, was met, Ms. Stewart cannot be held liable for the claim because she did not initiate the action on her own accord. *See Distributors, Inc. v. Dept. of Transportation*, 41 N.C. App. 548, 551, 255 S.E.2d 203, 206, *cert. denied*, 298 N.C. 567, 261 S.E.2d 123 (1979) (employee is not liable to injury to third persons if employee is following instructions of employer unless employee knew or had reason to know that the acts would injure another). In this case, Ms. Stewart went to the magistrate's office because she was instructed to do so by her employer, Mr. Ward, and she had no knowledge that the property had been returned or would be returned. Ms. Stewart did as instructed, and the magistrate issued a warrant charging plaintiff with conversion by a bailee of the pager and cell phone. There is no evidence in this record that Stewart acted with any malice toward the plaintiff. She reported the situation to her employer, and he made the decision to have her appear before the magistrate.

Furthermore, there is no evidence that Mrs. Ward had any part in the initiation of the action. Plaintiff argues that Mrs. Ward caused the criminal prosecution against plaintiff to be "continued" by stating to Ms. Hedrick that insufficient evidence was "not the point," and therefore this statement satisfies the initiation element of malicious prosecution. We disagree. Plaintiff has confused the tort of malicious prosecution with the tort of abuse of process which is discussed below. Improper actions taken after the issuance of process or initiation of an action are more properly considered under abuse of

process. *Stanback v. Stanback*, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979), *overruled on other grounds by Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). Consequently, the trial court should have dismissed the claim for malicious prosecution against both Ms. Stewart and Mrs. Ward.

[2] Although defendants also contend that the trial court should have directed a verdict as to Housecalls and Mr. Ward, we disagree and hold that the trial court correctly allowed the claim to go to the jury as to those defendants. Whether probable cause existed for the initiation of the earlier proceeding is a jury question when the facts are in dispute. *Allison v. Food Lion, Inc.*, 84 N.C. App. 251, 255, 352 S.E.2d 256, 258 (1987). Viewed in the light most favorable to plaintiff, there was evidence from which a jury could find malicious prosecution against the remaining defendants.

[3] There must be a new trial, however, as to Housecalls and Mr. Ward on the claim for malicious prosecution. The issues were submitted in such a manner that the jury found that *all* the defendants maliciously instituted the prosecution and abused process, entitling plaintiff to recover compensatory damages in the total sum of $30,000.00. Because the damages for malicious prosecution and abuse of process are lumped together in one sum and we cannot say what portion of those damages is attributable to the malicious prosecution by defendants Housecalls and Mr. Ward, there must be a new trial as to those defendants to determine damages.

B

Abuse of Process Claim

[4] " '[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attended (sic) to be secured.' " *Stanback*, 297 N.C. at 200, 254 S.E.2d at 624 (quoting *Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965)). Indeed, abuse of process " 'requires both an ulterior motive and *an act* in the use of the legal process not proper in the regular prosecution of the proceeding,' and that '[b]oth requirements relate to the defendant's purpose to achieve through the use of the process some end foreign to those it was designed to effect.' " *Id.* at 201, 254 S.E.2d at 624 (quoting R. Byrd, *Malicious Prosecution in*

*North Carolina*, 47 N.C.L. Rev. 285, 288 (1969)). Plaintiff argues that the efforts of Mr. and Mrs. Ward to have Ms. Hedrick continue with the criminal prosecution of plaintiff, rather than dismissing the matter, support this cause of action. We disagree.

In this case, there is no evidence of any improper use of the legal process *after* the issuance of the criminal summons. The reason given by Ms. Hedrick for the voluntary dismissal was "insufficient evidence." The Wards merely disagreed with her decision and sought to have the trial of the criminal matter proceed in a normal fashion. Standing alone, the statements by the Wards, that "that's not the point" in reply to Ms. Hedrick's explanation for dismissing the case is not sufficient to prove a willful act outside the regular course of the proceedings. Indeed, our case law states that the "act" requirement of abuse of process requires a defendant to commit some "wilful act whereby he sought to use the existence of the proceeding to gain advantage of plaintiff in respect to some collateral matter." *Stanback*, 297 N.C. at 201, 254 S.E.2d at 624. An example of such an improper willful act is the offer to discontinue a proceeding in return for the payment of money. *Id.* Because the elements of abuse of process were not met as to any of the defendants, the trial court erred in failing to dismiss the claim for abuse of process against all the defendants.

II

Over-billing Testimony

**[5]** Rule 402 of the North Carolina Rules of Evidence states that "[e]vidence which is not relevant is not admissible." N.C. Gen. Stat. § 8C-1, Rule 402 (1992). Relevant evidence is defined as evidence which tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). Defendants contend that evidence of Housecalls' billing practices was irrelevant to the claims stated by plaintiff and should not have been admitted at trial. We agree that the trial court erred in allowing the evidence of billing practices and the testimony of Robert Nowell (Mr. Nowell), the Assistant Director of the State Division of Medical Assistance, Program Integrity Section.

In his complaint, plaintiff alleged that defendants used the criminal process, "both before and after commencement of the criminal proceeding . . . in an effort to compel the plaintiff to forego his valid claim for salary, . . . in an effort to retaliate against the plain-

tiff for resigning from Housecalls, and in a deliberate effort to cause extreme embarrassment and expense to the plaintiff." At trial, however, plaintiff offered voluminous evidence through his own testimony and the testimony of Mr. Nowell about Housecalls' billing practices with respect to Medicaid. The testimony, which was admitted over defendants' objections, had little relevance to plaintiff's claims for unpaid wages, abuse of process, and malicious prosecution. The trial court apparently agreed with plaintiff's contention that the evidence went to defendants' motive in instituting criminal process against him.

Plaintiff never offered any evidence, however, which would connect his information about the alleged over-billing practices with the actions of defendants in causing a warrant to be issued against him. As shown above in the quotation from his complaint, plaintiff did not allege any such motivation for defendants' actions. Indeed, there was no evidence presented which indicated that plaintiff knew that there was an investigation by the State, or that he provided any information to the State in connection with its investigation. Plaintiff was not discharged in retaliation for any actions he might have taken; instead, plaintiff resigned on his own accord. The only evidence which remotely bears on the relevance of the over-billing evidence was plaintiff's testimony that Mr. Ward told him that any over-billing of Medicaid would be reconciled. There is simply no competent evidence which would warrant the highly prejudicial evidence that Housecalls was investigated by the State for over-billing Medicaid in a large amount. Even had the evidence been admissible under some theory, its prejudicial effect on the jury verdict far outweighed its slight probative value. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice").

[6] Finally, even assuming *arguendo* that plaintiff's evidence about his knowledge of over-billing practices by Housecalls was relevant and that Mr. Nowell was properly qualified as an expert witness, the testimony of Mr. Nowell was erroneously admitted to corroborate the testimony of plaintiff. Testimony offered in corroboration of other evidence may not contain additional information which was not in the initial evidence. *State v. Mayhand*, 298 N.C. 418, 425, 259 S.E.2d 231, 236 (1979).

In this case, plaintiff offered evidence about Housecalls submitting multiple bills to Medicaid for the same services. Mr. Nowell was

allowed to testify at length that in his opinion Housecalls over-billed Medicaid in two ways: first, by submitting multiple bills for the same services; and second, by "doubling up" after an initial bill was paid by doubling units and costs in subsequent billings. Mr. Nowell was also allowed to testify that the total amount of the alleged over-billing was $381,000.00. This testimony goes much further than that of plaintiff, and in no way can be said merely to corroborate plaintiff's testimony. Plaintiff did not even testify about the alleged practice of "doubling up" as a method of over-billing Medicaid. Therefore, the admission of Mr. Nowell's testimony was prejudicial error.

In summary, all claims for relief against Mrs. Ward and Ms. Stewart are dismissed, but the judgment against Housecalls and Mr. Ward for unpaid wages is affirmed. Although defendants also assigned error to the punitive damages which were awarded to plaintiff, we need not address those issues, because the case must be remanded for a new trial as to Mr. Ward and Housecalls to redetermine the underlying compensatory damages for the malicious prosecution claim. Therefore, the punitive damages will necessarily be redetermined by the jury.

Affirmed in part, reversed in part, and remanded for a

New trial.

Judge MARTIN, Mark D., concurs.

Chief Judge EAGLES concurs in the result and dissents in part.

Chief Judge EAGLES dissenting.

I concur in the result but dissent on the issue of the relevance and admissibility of the over-billing testimony. The majority held that Housecalls' billing practices were irrelevant to the claims stated by the plaintiff and Robert Nowell's testimony should not have been allowed into evidence at trial. The majority went on to hold that even if the billing practices of Housecalls were relevant, the billing evidence was highly prejudicial compared to the slight probative value of the evidence. After careful review, I disagree.

The four elements of a malicious prosecution claim are 1) that defendant initiated the earlier proceeding; 2) that there was malice on the part of defendant in doing so; 3) that there was a lack of probable

cause for the initiation of the earlier proceeding; and 4) that the earlier proceeding was terminated in favor of the plaintiff. *Best v. Duke University*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994), *reh'g denied*, 338 N.C. 525, 452 S.E.2d 807 (1994). In an action for malicious prosecution, the malice element may be satisfied by a showing of either actual or implied (legal) malice. *Best v. Duke University*, 112 N.C. App. 548, 552, 436 S.E.2d 395, 399 (1993), *aff'd in part, rev'd in part on other grounds*, 337 N.C. 742, 448 S.E.2d 506 (1994).

> "Actual malice . . . is defined as 'ill-will, spite, or desire for revenge, or under circumstances of insult, rudeness or oppression, or in a manner evidencing a reckless and wanton disregard of [plaintiff's] rights.' " (Citations omitted). Actual malice, which "is more difficult to substantiate . . . is only required if plaintiff is seeking punitive damages." (Citations omitted). Implied (or legal) malice, on the other hand, "may be inferred from want of probable cause in reckless disregard of plaintiff[s'] rights." (Citations omitted).

*Moore v. City of Creedmoor*, 120 N.C. App. 27, 43-44, 460 S.E.2d 899, 909 (1995), *aff'd in part, rev'd in part on other grounds*, 345 N.C. 356, 481 S.E.2d 14 (1997). Want of probable cause may not be inferred from malice for purposes of determining whether there is a cause of action for malicious prosecution but malice may be inferred from want of probable cause. *Cook v. Lanier*, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966).

Here, all four elements of a malicious prosecution claim have been met with respect to Housecalls and Terry Ward. Through Mr. Ward, Housecalls initiated the criminal proceeding against plaintiff. Mr. Ward, the owner of Housecalls, told his employee, Ms. Stewart, to go to a magistrate and get a warrant for plaintiff's arrest. In addition, there is some evidence that the defendants lacked probable cause. The magistrate issued the warrant but the district attorney dismissed the charges against plaintiff because plaintiff had returned the items he had allegedly "wrongfully" withheld from defendants. See *Pitts v. Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978), *but see Best v. Duke University*, 337 N.C. 742, 448 S.E.2d 506 (1994). The only real element in issue is whether the defendants displayed malice in prosecuting plaintiff.

Based on the law of North Carolina, it is clear that the court can infer legal or implied malice from the lack of probable cause. However, Housecalls' illegal billing practices are relevant to support

the notion that defendants harbored actual malice towards plaintiff when they initiated the prosecution against plaintiff.

Housecalls was defrauding Medicaid by double billing the government. Plaintiff had knowledge of these illegal billing practices and defendant knew that plaintiff had knowledge of these practices and could be a persuasive witness in administrative proceedings. When plaintiff noticed that defendant was double charging Medicaid for the same medical expenses and told his supervisor, defendant Terry Ward, Mr. Ward stated that any over-billing would be reconciled. Moreover, when plaintiff resigned, he prepared a letter of resignation citing problems with the accounting system which caused him "multiple ethical dilemmas." Copies of this letter were posted throughout defendants' office. At the time plaintiff resigned, defendants were well aware that the plaintiff had knowledge of their dishonest billing procedures. Furthermore, when the district attorney tried to explain to Mr. and Mrs. Ward that there was no way she could win the case since plaintiff had returned the cell phone and pager, Mr. and Mrs. Ward said: "That's not the point." Mr. and Mrs. Ward demanded that the district attorney proceed with the case. Defendants' desire to press forward with plaintiff's prosecution even after the items in question had been returned suggests that the "point" of the prosecution was to mar plaintiff's personal and professional reputation as a CPA and undermine his credibility as a witness in subsequent proceedings. All this evidence is relevant to substantiate the actual malice element in plaintiff's malicious prosecution claim. Accordingly, the trial court did not err when it admitted the evidence of Housecalls' billing practices.

The majority opinion also addresses Mr. Robert Nowell's testimony. Mr. Nowell is the Assistant Director of the State Division of Medical Assistance, Program Integrity Section. Mr. Nowell was a corroborating witness and testified about Housecalls' illegal billing practices. In the event of a new trial, Mr. Nowell should be allowed to testify but the trial court should carefully limit his testimony to evidence that actually corroborates other testimony.

Accordingly, I agree with the majority and would grant a new trial but would allow Housecalls' billing practices into evidence through both plaintiff and Mr. Nowell to show actual malice.