William Daye SANDS, Appellant,

v.

LIVING WORD FELLOWSHIP, an Alaska Corporation, Alger Morris, Ted Hethcote, Gary Oathout, Daniel Hejl and Lisbeth Hejl, Appellees.

No. S–9031.

Supreme Court of Alaska.

Sept. 14, 2001.

Rehearing Denied Nov. 2, 2001.

David H. Shoup and Richard W. Maki, Anchorage, for Appellant.

James M. Powell and Teena J. Williams, Anchorage, for Appellees Living Word Fellowship, Alger Morris, Ted Hethcote, and Gary Oathout.

Matthew K. Peterson and Scott Hendricks Leuning, Clapp, Peterson & Stowers, LLC, Anchorage, for Appellees Daniel and Lisbeth Hejl.

Before MATTHEWS, Chief Justice, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Will Sands shot himself after suffering emotional distress allegedly caused by the actions of Living Word Fellowship, a church, and two of its members, Daniel and Lisbeth Hejl. Sands brought suit in superior court against Living Word and the Hejls, alleging three causes of action: (1) negligent infliction of emotional distress, (2) intentional infliction of emotional distress, and (3) abuse of process. The superior court dismissed all of Sands's claims as to both defendants, holding that the First Amendment to the U.S. Constitution bars Sands's emotional distress and negligence claims, and that Sands lacked standing to bring the abuse of process claim. For the reasons stated below, we affirm the dismissal of all claims against Living Word,

and the abuse of process claim against the Hejls. We reverse the dismissal of the other claims against the Hejls.

## II. *FACTS AND PROCEEDINGS*

Because this is an appeal of a motion to dismiss, we assume that Sands's factual allegations, which are set out in this section, are true.[1]

In 1993 Will Sands became friends with Jodi Hejl, the daughter of defendant Lisbeth Hejl and stepdaughter of defendant Daniel Hejl. Will Sands and Jodi Hejl, both in high school at the time, started dating shortly thereafter.

During the summer of 1993, Jodi Hejl asked her mother for permission to attend Sands's church, Wasilla Ministries, where Will's mother, Marion Sands, is the pastor. That summer Jodi Hejl attended Wasilla Ministries about six times with Will, and she also continued to attend her own family's church, Living Word Fellowship.

In the fall of 1993, Jodi Hejl informed Will's father, William James Sands, of her desire to run away from home. She ran away from home in November 1993. Jodi Hejl did this at least partly because her stepfather was sexually abusing her.

Jodi Hejl's parents, Daniel and Lisbeth Hejl, approached the elders of their church, Living Word, and alleged that Wasilla Ministries was a "cult." They also accused Will Sands of being a "cult recruiter" for Wasilla Ministries. Subsequently, the Living Word elders contacted the Sands family to address certain "doctrinal differences" between their churches. These doctrinal differences included their views on parental authority and biblical interpretation. Living Word elder Ted Hethcote asked the Wasilla Ministries community to "repent" for its beliefs, but the Wasilla Ministries community "declined" to do so.

Living Word and its elders then decided to "warn the Christian community" about the "dangerous practices" that Wasilla Ministries allegedly practiced. Living Word and its elders sought to "disfellow" Wasilla Ministries and shun its members; the Living Word elders instructed their congregants, as well as eight other churches, to shun Wasilla Ministries members.

The Hejls responded to these events by filing a lawsuit against Wasilla Ministries and several of its members, including William James Sands, Will Sands's father, and Marion Sands. In 1994 the Hejls obtained an injunction from the superior court that prohibited William James Sands, Marion Sands, and other Wasilla Ministries members from further contact with the Hejl family.[2] Eventually, both the *Anchorage Daily News* and the *Frontiersman* newspapers printed articles containing the Hejls' allegations against Wasilla Ministries.

These events all caused Will Sands great emotional distress. Will also felt responsible for the lawsuit against his church because of his relationship to Jodi Hejl. In October 1996 Will shot himself in the head in an attempt to kill himself. Although he survived this attempt, he is now paralyzed from the chest down.

On May 2, 1997, Will Sands commenced an action in the United States District Court for the District of Alaska, alleging five causes of action, including one federal civil rights claim based on 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The federal district court dismissed the single federal claim in October 1997 for failure to state a claim upon which relief could be granted. Will Sands filed this state court action with the superior court in October 1997, omitting his federal claim. In his complaint against Living Word and its elders[3] (collectively, Living Word) and the Hejls, Sands alleges (1) negligent infliction of emotional distress, (2) intentional infliction of emotional distress, and (3) abuse of process. The first two claims allege that the defendants acted negligently and intentionally to

---

1. *See Caudle v. Mendel*, 994 P.2d 372, 374 (Alaska 1999).

2. Specifically, the injunction prohibited contact between Jodi Hejl and the following persons: Marion Sands, William James Sands, Lynn Chadwell, Mark Chadwell, Marie Miller, Brad Miller, Sandy Bean, Chris Murphy, Judy Otto,

Wasilla Ministries, Inc., and its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Wasilla Ministries.

3. Sands filed the complaint against Living Word and some of its elders, including Alger Morris, an

harm William James Sands and that they violated their duty of care. The abuse of process claim alleges that the Hejls' 1994 lawsuit was an improper use of the judicial process.

The Hejls moved to dismiss the action in the superior court under Alaska Civil Rule 12(b)(6), and Living Word joined the motion. The superior court granted the motion to dismiss all claims and entered final judgment in September 1998. Will Sands appeals that decision.

### III. STANDARD OF REVIEW

■ The superior court dismissed all of Will Sands's claims under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. We review this ruling de novo, and we presume that all factual allegations made in the complaint are true.[4]

■ For a complaint to survive a Rule 12(b)(6) motion, the complaint need only allege a set of facts consistent with and appropriate to some enforceable cause of action.[5] A complaint should be deemed sufficient, and a motion to dismiss denied, if evidence may be introduced that will sustain a grant of relief to the plaintiff.[6]

### IV. DISCUSSION

A. *The Superior Court Properly Dismissed Sands's Claims Against Living Word and the Abuse of Process Claim Against the Hejls.*

1. *Sands's negligent and intentional infliction of emotional distress claims against Living Word are barred by the free exercise clauses of the U.S. and Alaska Constitutions.*

Sands claims that Living Word negligently and intentionally inflicted emotional distress

upon him and breached its duty of care to him by shunning members of his church, calling his church a "cult," and referring to him as a "cult recruiter." The superior court concluded that the First Amendment to the U.S. Constitution protects Living Word's behavior. Therefore, the superior court dismissed Sands's negligent and intentional infliction of emotional distress claims against Living Word.

■ If conduct is protected by the free exercise clause of the First Amendment to the U.S. Constitution and by article I, section 4 of the Alaska Constitution, a tort action based on that conduct is barred.[7] In *Frank v. State*,[8] we announced the relevant standard for whether conduct is protected by the free exercise clauses in the First Amendment to the U.S. Constitution and article I, section 4 of the Alaska Constitution. In *Frank*, we stated that free exercise protection extends to conduct that satisfies a two-part test. First, conduct is protected only if three threshold requirements are satisfied: there must be a religion involved, the conduct must be religiously based, and the claimant must be sincere.[9] Second, the conduct must not "pose some substantial threat to public safety, peace or order,"[10] and there must be no "competing governmental interests that are of the highest order and [are] not otherwise served."[11]

■ The behavior that is the basis for Will Sands's emotional distress and negligence claims is protected religious activity under *Frank*. Sands alleges that Living Word elders instructed its church's members, as well as members of eight other churches, to "shun" and "disfellow" Wasilla Ministries members from the Christian community. As for the first threshold *Frank* requirement, the facts alleged by Sands show that religion

---

elder and pastor of Living Word, and Ted Hethcote and Gary Oathout.

**4.** *See Caudle v. Mendel*, 994 P.2d 372, 374 (Alaska 1999).

**5.** *See Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 128 (Alaska 2000).

**6.** *See id.*

**7.** *See Paul v. Watchtower Bible & Tract Soc'y*, 819 F.2d 875, 880 (9th Cir. 1987).

**8.** 604 P.2d 1068 (Alaska 1979).

**9.** *Id.* at 1071.

**10.** *Id.* at 1070.

**11.** *Id.* We also stated in *Frank* that freedom of religious belief is "protected absolutely," and that "[n]o value has a higher place in our constitutional system of government than that of religious freedom."

was involved, the "shunning" was religiously based, and Living Word and its elders were sincere. As Sands concedes in his brief, the shunning was undertaken "to force [Wasilla Ministries and its members] to renounce and change their religious beliefs." Also, as other courts have noted, "[s]hunning purportedly has its roots in early Christianity and various religious groups in our country engage in the practice." [12] And shunning is religiously based because it is "deeply rooted in a religious belief." [13] The shunning alleged in Sands's complaint involved and was motivated by religion. Also, there is no allegation in the complaint that Living Word's conduct was not "sincere." Therefore, Living Word's "shunning" behavior satisfies the first *Frank* requirement.

At least one other court has held that similar "shunning" behavior involves religion and is religiously based. In *Paul v. Watchtower Bible & Tract Society*, [14] a disassociated member of the Jehovah's Witnesses brought an action alleging various torts arising from "shunning." [15] The Ninth Circuit held that the religious "shunning" behavior in *Paul* was protected by the First Amendment because imposing tort liability would have the same effect as a prohibition on such behavior and would directly restrict the free exercise of religion:

> [S]hunning is an actual practice of the Church itself, and the burden of tort damages is direct. Permitting prosecution of a cause of action in tort, while not criminalizing the conduct at issue, would make shunning an "unlawful act". Imposing tort liability for shunning on the Church or its members would in the long run have the same effect as prohibiting the practice and would compel the Church to abandon part of its religious teachings.... The Church and its members would risk substantial damages every time a former Church member was shunned. In sum, a state tort law prohibition against shunning would directly restrict the free exercise of the Jehovah's Witnesses' religious faith.[16]

The "shunning" behavior alleged by Sands also satisfies the second requirement under *Frank*. Living Word's alleged "shunning" does not pose "some substantial threat to public safety, peace or order." [17] The harm alleged by Sands is emotional harm to Will Sands, and as such is not a threat to the public.[18] Sands does not allege that Living Word attempted to discipline or control any member of the public; rather, the Living Word community simply attempted to disassociate itself from Wasilla Ministries and its community.[19]

Therefore, because the free exercise clauses of the First Amendment to the U.S. Constitution and article I, section 4 of the Alaska Constitution protect the alleged "shunning" as a religious activity, Sands's emotional and negligence claims are barred. The superior court properly dismissed these claims against Living Word.

> 2. *If Sands's complaint can be construed to contain a claim against Living Word for defamation, such a claim is also barred by the First Amendment.*

Sands does not explicitly assert a defamation claim in his complaint; however, he does

---

**12.** *Paul,* 819 F.2d at 877.

**13.** *Herning v. Eason,* 739 P.2d 167, 169 (Alaska 1987) (noting that "conduct is considered religiously based if the practice is deeply rooted in a religious belief").

**14.** 819 F.2d 875 (9th Cir.1987).

**15.** *Id.* at 877. Paul's various claims included defamation, invasion of privacy, fraud, and outrageous conduct.

**16.** *Id.* at 881 (citations omitted).

**17.** *Frank,* 604 P.2d at 1070 (quoting *Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)).

**18.** *See Paul,* 819 F.2d at 883 ("[S]hunning [does] not constitute a sufficient threat to the peace, safety, or morality of the community as to warrant state intervention.").

**19.** Therefore, a decision by the Oklahoma Supreme Court, *Guinn v. Church of Christ,* 775 P.2d 766, 777–783 (Okla.1989), cited by Sands, is inapplicable to this case. In *Guinn,* the court held that a church's attempt to control a person who had withdrawn from the church after the church elders had disciplined her for committing fornication was not protected by the First Amendment. In *Guinn,* the church intended to discipline, control, and involve the former church member, even after she had withdrawn.

claim that the defendants made "false accusations" against Wasilla Ministries—specifically, accusations that Wasilla Ministries was a "cult" and that Will Sands was a "cult recruiter." These allegations could be construed as a claim for defamation.

■ However, even if Sands's complaint can be read to contain a claim for defamation, that claim is also barred by the First Amendment to the U.S. Constitution. The First Amendment bars actions for defamation where the allegedly defamatory statements are expressions of ideas and "cannot reasonably be interpreted as stating actual facts about an individual." [20] If the context demonstrates to the audience that the speaker is not purporting to state or imply actual, known facts, then the speech is protected by the First Amendment. [21]

■ Living Word's allegedly defamatory statements in this case—that Wasilla Ministries is a "cult" and that Sands is a "cult recruiter"—are pronouncements of religious belief and opinion. Because these are not factual statements capable of being proven true or false, they are not actionable as a basis in a defamation claim. [22] To ascertain whether a statement is factual, courts consider "the type of language used, the meaning of the statement in context, whether the statement is verifiable, and the broader social circumstances in which the statement was made." [23] It is not factually verifiable whether a certain church is a "cult" or whether church members are "cult recruiters." Instead, these are statements of religious belief and opinion. [24] Therefore, if Sands's complaint could be construed to contain a cause of action for defamation, this cause of action

is not actionable under the First Amendment to the U.S. Constitution.

> 3. *Sands's abuse of process claim against Living Word and the Hejls was properly dismissed.*

■ In addition to his emotional distress and negligence claims, Sands also brought an abuse of process claim against Living Word and the Hejls. Sands based this claim on the 1994 lawsuit brought by the Hejls, which resulted in the November 7, 1994 injunction against Wasilla Ministries. Sands claims that this suit was an abuse of process because the Hejls filed their 1994 lawsuit "for the improper purposes of humiliating and ostracizing Sands into submission." The superior court determined that because he was not a party to that suit and was not covered by the injunction, Will Sands lacked standing to sue for abuse of process.

However, Sands did have standing to bring his abuse of process claim against the Hejls because the 1994 lawsuit that was the basis for the claim led to an injunction that enjoined his conduct. The injunction enjoined the conduct of Sands's parents and Wasilla Ministries and their "agents, servants ... and those persons in active concert or participation with [them]." Therefore, the injunction covered Will Sands by prohibiting him from having contact with the Hejls.

■ Nevertheless, we affirm the decision of the superior court to dismiss the abuse of process claim against Living Word and the Hejls. Even though Will Sands had standing, he failed to state a claim for abuse of process. In order to state a claim for abuse of process, Sands was required to state facts

**20.** *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

**21.** *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 57, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (parody); *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 285–86, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974) (hyperbole); *Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler*, 398 U.S. 6, 14, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970) (hyperbole).

**22.** *See Milkovich*, 497 U.S. at 21, 110 S.Ct. 2695.

**23.** *Id.* at 24, 110 S.Ct. 2695 (Brennan, J., dissenting) (citing *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280 (4th Cir.1987); *Janklow v. Newsweek, Inc.*, 788 F.2d 1300 (8th Cir.1986); *Ollman v. Evans*, 750 F.2d 970 (D.C.Cir.1984)).

**24.** Other courts in similar contexts have also refused to decide the meaning of religious terms in religious disputes. *See Hartwig v. Albertus Magnus College*, 93 F.Supp.2d 200, 218–19 (D.Conn.2000) (declining to decide the meaning of "priest"); *Klagsbrun v. Va'ad Harabonim*, 53 F.Supp.2d 732, 741 (D.N.J.1999) (declining to decide the meaning of "bigamist").

sufficient to establish that Living Word and the Hejls had both an ulterior purpose and that they committed a "willful act in the use of the process not proper in the regular conduct of the proceeding."[25] With respect to this latter requirement, Sands alleges that Living Word and the Hejls performed the following willful acts: they coerced Jodi Hejl to sign affidavits in support of the 1994 lawsuit, and they publicized the complaint and other documents filed in the case.

■ However, this allegation is not sufficient to state a claim for abuse of process. The "willful act" requirement requires some additional act separate from the filing of the suit. As we stated in *Hayes v. A.J. Associates, Inc.*, "[m]erely filing a suit, even for an improper purpose, is not sufficient for an abuse of process action."[26] That is because a claim for abuse of process is a claim that the defendant misused process to attain some separate ulterior purpose independent from the process—for example, to extort the plaintiff and force him to take some action by the use of the process as a threat. The Restatement (Second) of Torts observes that "[t]he usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."[27]

We have noted in the past that one example of the required willful act could include arrest and confinement to intimidate the plaintiff;[28] other jurisdictions have similarly held that the required willful acts might include an offer to discontinue a proceeding in return for the payment of money;[29] or filing a lien to force the plaintiff to pay off some other unrelated debt.[30]

Sands alleges that the process was (1) improperly initiated through false affidavits and (2) improperly publicized by Living Word and the Hejls. Neither of these acts is sufficient to qualify as the required "willful acts." Any improper publication of the 1994 suit does not lead to a viable claim for abuse of process. The publicization alleged by Sands merely made available to the public allegations and documents that were matters of public record anyway, since they were part of a lawsuit not filed under seal. These acts did not constitute extortion or coercion. Moreover, if Sands was forced to rely on improper initiation of the 1994 lawsuit, through the allegedly false affidavits, the abuse of process claim would be barred by the statute of limitations because Sands did not file suit until 1997.[31] Therefore, Sands has failed to state a claim for abuse of process against Living Word and the Hejls and this claim was properly dismissed by the superior court.[32]

B. *The Superior Court Erred in Dismissing Sands's Negligent and Intentional Infliction of Emotional Distress Claims Against the Hejls.*

Sands claims that Living Word and the Hejls negligently and intentionally inflicted emotional distress upon him and breached their duty of care to him. The superior court did not distinguish between claims against the Hejls and Living Word, and concluded that the activities of both Living Word and the Hejls were protected by the First Amendment to the U.S. Constitution.

■ Yet, Sands's allegations against the Hejls are based on conduct that is not protected under the First Amendment to the

---

25. *Caudle v. Mendel*, 994 P.2d 372, 376 (Alaska 1999).

26. 960 P.2d 556, 571 (Alaska 1998).

27. Restatement (Second) of Torts § 682 cmt. b (1977). *See also* 1 Am.Jur.2d *Abuse of Process* § 6 (1994) ("[Abuse of process] typically involves some form of extortion.").

28. *See Jenkins v. Daniels*, 751 P.2d 19, 22 (Alaska 1988).

29. *See Estridge v. Housecalls Healthcare Group, Inc.*, 131 N.C.App. 744, 509 S.E.2d 219, 223

(1998), *rev'd in part on other grounds*, 351 N.C. 183, 522 S.E.2d 581, 582 (1999).

30. *See Kelly v. McBarron*, 258 Or. 149, 482 P.2d 187, 189–90 (1971) (dicta).

31. *See* AS 09.10.070 (limitations period is two years).

32. Because we hold that Sands failed to state a claim for abuse of process against Living Word and the Hejls, we need not reach the issue of whether the relevant statute of limitations barred this claim in its entirety.

U.S. Constitution or by article I, section 4 of the Alaska Constitution. Sands's claim against the Hejls differs from his claim against Living Word. Sands alleges that the Hejls, in addition to shunning Sands and Wasilla Ministries, conspired against him by filing the 1994 lawsuit, coercing Jodi Hejl "into signing false affidavits in support of their lawsuit," and disseminating their 1994 complaint to unconnected third parties. In addition, Sands alleges that the Hejls acted at least in part without a religious motivation. He alleges that the Hejls acted "[i]n order to control Jodi and suppress her claims of abuse."[33] As noted earlier, conduct is only protected under the free exercise clause if religion is involved, the conduct is religiously based, and the claimant is sincere.[34] The Hejls' conduct was allegedly motivated by the desire to suppress Jodi Hejl's allegations of sexual abuse by her stepfather, and is therefore not religiously based. The negligent and intentional infliction of emotional distress claims based on this conduct are therefore not barred by the First Amendment to the U.S. Constitution or article I, section 4 of the Alaska Constitution. The superior court erred when it dismissed these claims.[35]

## V. CONCLUSION

Because Will Sands's negligent and intentional infliction of emotional distress claims against Living Word are barred by the free exercise clauses of the U.S. and Alaska Constitutions, and because there is no enforceable abuse of process claim against Living Word, we AFFIRM the superior court's dismissal of all claims against Living Word. Because Sands failed to state a claim for abuse of process against the Hejls, we AFFIRM the superior court's dismissal of the abuse of process claim against the Hejls. However, because the free exercise clauses of

the U.S. and Alaska Constitutions do not bar Will Sands's negligent and intentional infliction of emotional distress claims against the Hejls, we REVERSE the superior court's dismissal of these claims against the Hejls.

EASTAUGH and BRYNER, Justices, not participating.

---

**33.** Sands's counsel acknowledged at oral argument that Sands's allegations imputed a "dual motivation," including both religious and nonreligious components, to the Hejls, but not to Living Word.

**34.** See Frank v. State, 604 P.2d 1068, 1071 (Alaska 1979).

**35.** Living Word argues that all of Sands's claims (including claims against the Hejls) should be dismissed because of the relevant statute of limi-

tations. However, the timing of much of the Hejls' conduct is unclear from the facts alleged in Sands's complaint. As we noted recently in Hebert v. Honest Bingo, 18 P.3d 43, 48–49 (Alaska 2001), the analysis of the defense of the statute of limitations is fact-intensive and it ordinarily is premature to decide a statute of limitations issue on a motion to dismiss. Therefore, we decline to hold that Sands's negligent and intentional infliction of emotional distress claims should be dismissed on this basis.